**ALLIED DIVISION OF the DELAWARE CONTRACTORS ASSOCIATION, INC., Plaintiff,**

v.

**LOCAL UNIONS 542, 542A, 542B, INTERNATIONAL UNIONS OF OPERATING ENGINEERS, AFL–CIO, Defendant.**

Civ. A. No. 4524.

United States District Court,
D. Delaware.

Dec. 8, 1972.

Andrew G. T. Moore, II of Killoran & Van Brunt, Wilmington, Del., and Vincent J. Apruzzese, Francis A. Mastro and James F. Murphy of Apruzzese & McDermott, P. C., Springfield, N. J., of counsel, for plaintiff.

John Biggs, 3rd, Wilmington, Del., and Abraham E. Freedman of Freedman, Borowsky & Lorry, Philadelphia, Pa., of counsel, for defendant.

OPINION

LATCHUM, District Judge.

In this case Allied Division of The Delaware Contractors Association, Inc. ("Association") has moved for a preliminary injunction to restrain Local Unions 542, 542A, 542B, International Union of Operating Engineers, AFL–CIO ("Local Unions") from striking certain of the Association's member contractors and to require the Local Unions to arbitrate an existing grievance as provided in the collective bargaining contract. Jurisdiction exists by virtue of Section 301 of the Labor Management Relations Act, 29 U.S.C. §§ 141, et seq., 185.

The undisputed record shows: On October 6, 1972 the Building and Construction Trades Council of Delaware ("the Council"), of which the Local Unions are constituent members, notified the Association that General Election Day on November 7, 1972 had been established as a holiday and would be so observed by the Council's members. On October 11, 1972 the Association was advised by the President of the Local Unions that they had voted in opposition to the holiday resolution adopted by the Council and that they did not regard Election Day as a holiday for the Local Unions.

As a result of the notification received from the Council, no work was performed at the construction sites by the Association's member contractors and consequently their employees in most cases [1] were not paid for Election Day, a day they did not work. On November 21, 1972 some of the member contractors of the Association were notified by the Local Unions that certain operating engineers in their employ had not received pay for November 7, 1972, which the Local Unions regarded as due, and that if these employees were not paid by November 29th, the next regular pay day, the Local Unions would strike [2]

---

1. In a few instances operating engineers did work on Election Day and were paid.

2. The Local Unions' letter to the contractors stated that the Unions regarded the non-payment of wages for Election Day as a "clear violation" of the contract which freed the Unions from the opera-

such employers. Upon receipt of that notice the Association demanded that the Election Day pay dispute be submitted to arbitration under the collective bargaining contract. The Local Unions refused this demand.

Article VI, Section 2 of the collective bargaining agreement between the Association and the Local Unions effective from July 15, 1971 to April 30, 1973, provides in relevant part:

"Section 2. Nonjurisdictional Disputes and Grievances: All disputes and grievances of any kind or nature whatsoever arising under the terms and conditions of this Agreement, and all questions involving the interpretation of this Agreement, shall be referred to a grievance committee consisting of two members selected by the employer and two members selected by the Union."

This section then provides that either party may invoke the grievance procedure and further provides that if the grievance committee is unable to promptly resolve the issues in dispute within 48 hours, the matter shall be referred to an impartial arbitrator according to a detailed selection procedure. Section 2 then continues to read:

"The decision of the arbitrator shall be final and binding on the parties. There shall be no strikes, work stoppages, slowdowns, or lockouts during the arbitration."

Article VI, Section 3, provides in part as follows:

"Section 3. Strikes and Lockouts: It is agreed that there shall be no strikes, work stoppages, or slowdowns of any character whatsoever by the Union or its members . . ., during the term of this Agreement [with an exception not relevant to the present case]. If an employer is in *clear violation* of the contract and his violation is not corrected on notice from the Business Manager, the Business Manager may call a strike against the violating employer without observing the grievance and arbitration procedure. * * *" (Emphasis supplied).

The Local Unions contend that failure to pay the operating engineers for Election Day constituted a "clear violation" of the second sentence of Article IV, Section 4 of the Agreement which reads:

"Section 4. Weekly Pay: When employees covered by this Agreement report for starting work, they shall be entitled to work until the end of their job and shall not be replaced before the conclusion of their job except for just cause. *If their job continues for more than five days, said employees shall be on a forty hour weekly guarantee basis at the weekly rate for the elapsed working days while their jobs last.* If rehired before the expiration of one week they shall be compensated for time lost." (Emphasis added).

The Union argues that its members were guaranteed pay for a forty hour week by the language underlined above and although they did not work on Election Day they nevertheless were entitled to be paid for that day.

Article IV; Section 7A of the contract designates seven paid holidays for the Local Unions and Election Day is not one of them.

 Since the Supreme Court's decision in Boys Markets v. Retail Clerk's Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) it is firmly established that a federal court may enjoin a strike over a grievance that the parties have contractually agreed to arbitrate. Similar to the contract in the *Boys Markets* case, the agreement involved here contains a broad arbitration clause and a co-extensive no-strike provision. Section 2 requires "all disputes and grievances of any kind or nature whatsoever arising under . . . [the] Agree-

---

tion of the no-strike clause. Thus, the Unions' plan "to take whatever action was deemed necessary to enforce the con-

tract" contained the implicit threat of a strike. (Ex. to Compl.).

ment, and all questions involving the interpretation of [the] Agreement" to be arbitrated. The only relevant exception to this all-encompassing provision is found in Article VI, Section 3, which exempts from the arbitration requirement "clear violations" of the contract by employers. A clear violation is one that is quickly and easily understood and is free from obscurity, ambiguity or undue complexity. The Court does not find that the alleged misconduct of the Association's member contractors fits into this category.

First, in the instant situation, it is not at all "clear" from the express language of Article IV, Section 4 quoted above that the guaranteed 40 hour weekly wage provision applies in all cases and under all circumstances, particularly when the Council, of which the Local Unions are members, by resolution determined not to work on Election Day. No degree of certainty exists whether the provision is applicable where employees work a short week for reasons not attributable solely to their employers. At most the question is debatable and unclear.

Secondly, the question whether employers were obligated to pay their employees for the non-working day is one which the Local Unions may not, in advance of arbitration in order to free themselves from the no-strike clause, determine on their own that an "ambiguous issue" is a "clear violation" of the contract. To hold otherwise would defeat the very purpose of the arbitration and no-strike provision. Cf. Elevator Manufacturer's Association v. International Union, 331 F.Supp. 165 (S.D.N.Y.1971).

Finally, in United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) the Supreme Court said:

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not sus-

ceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (Footnote omitted).

Applying this rule to the present case, the Court concludes that the dispute involved is one covered by the broad and sweeping arbitration and no-strike provisions of the contract since it cannot be said with any "positive assurance" that the failure to pay union members for Election Day amounts to a "clear violation" of the contract which would otherwise take the dispute out of the arbitration provisions.

Whether or not the union members are entitled to be paid on Election Day is an appropriate question for resolution by the grievance committee or arbitrator who have the explicit responsibility to determine all disputes of any kind and nature and to resolve all questions relating to the interpretation of the Agreement.

The Court further finds that, unless an injunction issues against the threatened strike, irreparable injury will result in the stoppage of major construction activities of the Association within this District, involving a number of projects of public importance, and that the Association members will suffer more from the denial of the injunction than will the Union from its issuance.

Furthermore, there are strong reasons supporting the injunctive relief requested. First, arbitrators are more competent than courts to revolve the present "pay" dispute under an appropriate construction of the contract. Second, the arbitration process contributes to labor peace. Third, ordering arbitration effectuates the parties' contractual intent to settle disputes by arbitration. Fourth, a suit for damages rather than an injunction ordering arbitration may not repair the harm done by a strike and might exacerbate labor-management strife. Avco Corp. v. Local Union No. 787, 459 F.2d 968 (C.A. 3, 1972).

Accordingly, a preliminary injunction will issue enjoining the threatened

strike and requiring the parties to arbitrate under the broad provisions of their collective bargaining agreement.

The above shall constitute the Court's findings of fact and conclusions of law as required by Rule 52(a), F.R.Civ.P.